**ELK RUN COAL COMPANY, Plaintiff,**

v.

**Bruce BABBITT, Secretary of the United States Department of Interior; and Robert Uram, Director of the Office of Surface Mining, Reclamation, and Enforcement, Defendants.**

Civil Action No. 2:95–1149.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 18, 1996.

Robert G. McLusky, James R. Snyder and M. Shane Harvey, Jackson & Kelly, Charleston, WV, for plaintiff.

Gary L. Call, Assistant U.S. Attorney, Rebecca A. Betts, U.S. Attorney, Charleston, WV, Wayne A. Babcock, U.S. Attorney, Office of the Solicitor, Pittsburgh, PA, for defendants.

## *MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending are Elk Run's Motions for Summary Judgment and for a Preliminary Injunction. Also pending is Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) of the *Federal Rules of Civil Procedure.* The Court DENIES Defendants' motion and GRANTS Plaintiff's Motion for Summary Judgment. Because the Court grants Plaintiff's motion, its Motion for Preliminary Injunction is moot.

This case arises from an enforcement action taken by Defendants against Elk Run

pursuant to the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. §§ 1201–1328. The Act and the regulations promulgated comprehensively regulate coal mining in the United States. The purpose of SMCRA is, among other things, to "establish a nationwide program to protect society and the environment from the adverse effects of surface mining operations...." 30 U.S.C.A. § 1202(a). The Act is administered by the Secretary of the Interior acting through the Office of Surface Mining (OSM). 30 U.S.C. § 1211.

States wishing "to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" may submit to the Secretary of the Interior "a State program which demonstrates that such State has the capability of carrying out the provisions of [SMCRA] and meeting its purposes...." 30 U.S.C. 1253(a). Based on its enactment of the West Virginia Surface Coal Mining and Reclamation Act, W.Va.Code §§ 22–3–1 *et seq.*, West Virginia received OSM's approval to exercise primary regulatory authority over surface coal mining operations within its borders on January 21, 1981, thereby becoming a so-called "primacy" state. The West Virginia Department of Environmental Protection (WVDEP) is the designated regulatory and enforcement agency for West Virginia.

### BACKGROUND

This case had its genesis in a citizen complaint filed with the WVDEP by Richard and Tressie Judy. The Judys alleged Elk Run's blasting activities were responsible for damaging the foundations of two residential buildings on their property. On February 22, 1995, WVDEP inspectors were sent to investigate the complaint, and in March 1995 WVDEP issued two notices of violation (NOVs) and a cessation order (CO) to Elk Run for "[f]ail[ure] to prevent blasting damage to private property outside the permit area" and directed Elk Run to repair the damages. Pl.'s Mem.Supp.Prelim.Inj. at 8. After receiving a report from an OSM engineer who had assisted the WVDEP inspectors, WVDEP issued another CO against Elk Run on April 25, 1995 for failing to abate the earlier NOV's.

Elk Run appealed the NOV's and the CO's to the West Virginia Surface Mine Board (SMB).[1] After a hearing, SMB concluded Elk Run had not damaged either of the two structures and vacated the two NOVs and the two COs. On August 3, 1995, less than two weeks after the SMB order, OSM issued a Ten Day Notice (TDN) to WVDEP.[2] WVDEP responded to the TDN by advising OSM that it had already taken enforcement actions against Elk Run, but that SMB had vacated those actions. On August 25, 1995, OSM advised WVDEP that it considered the SMB order "arbitrary and capricious." On August 31, 1995, WVDEP asked OSM to review informally that determination, pursuant to 30 C.F.R. § 842.11(b)(1)(iii)(A) (1995),[3] because the SMB order was supported by substantial evidence.

1. The West Virginia Surface Mine Board is an independent statutory body composed of seven members appointed by the Governor with the advice and consent of the Senate. W.Va.Code § 22B–4–1.

2. The Ten Day Notice was issued on a standardized form that stated:

 You are notified, as a result of a citizen complaint ... the Secretary has reason to believe that [Elk Run Coal] is in violation of the Act or a permit condition required by the Act. If the State Regulatory body fails within ten days after receipt of this notice to take appropriate action to cause the violation(s) described herein to be corrected or to show cause for such failure ..., then a Federal inspection of the surface coal mining operation at which the alleged violation(s) is occurring will be conducted and appropriate enforcement action as required by Section 521(a)(1) [30 U.S.C. 1271(a)(1)] of the Act will be taken.

 The violation described on the TDN form was "[t]he person failed to conduct blasting operations in such a way as to prevent damage to private property outside the permit area." Pl.'s Compl. for Inj. Ex. 5.

3. 30 C.F.R. § 842.11(b)(1)(iii)(A) provides:

 [OSM] shall immediately notify the state regulatory authority in writing when in response to a ten-day-notice the State regulatory authority fails to take appropriate action to cause a violation to be corrected or to show good cause for such failure. If the State regulatory authority disagrees with [OSM's] written determination, it may file a request, in writing, for informal review of that written by the Deputy Director....

In October 1995, before OSM ruled on WVDEP's informal appeal, it sent a "technical assistance team" to the Judy property in apparent disregard of its own regulation.[4] On the basis of the investigation performed during that visit, OSM recommended that an additional federal inspection be conducted to gather more evidence. After further investigation OSM issued a federal NOV against Elk Run on December 7, 1995 alleging Elk Run's blasting had damaged one of the buildings on the Judy property in violation of a State regulation. The NOV required Elk Run to submit a revised blasting plan to OSM and to repair the Judy structure allegedly damaged by blasting or to compensate the Judys. At that point, Elk Run filed for a preliminary injunction against OSM in this Court. Although the Court conducted a brief hearing on January 12, 1996 to consider the injunction, it did not rule because OSM agreed to forgo enforcement action against Elk Run pending the Court's consideration of the dispositive motions.

Elk Run advances several arguments in support of its claim that OSM's NOV was issued illegally. Those arguments include: 1) OSM is collaterally estopped from challenging the SMB order; 2) WVDEP's enforcement action was "appropriate action" precluding further OSM oversight; 3) WVDEP's reliance on SMB's decision established "good cause" for taking no further action pursuant to 30 C.F.R. § 842.11(b)(1)(ii)(B)(1)–(4), and thus precluded additional OSM oversight; 4) Even if OSM has the authority to preempt SMB's decision, it first must direct its TDN to SMB; 5) OSM reviewed and relied on the record created at the SMB hearing, but failed to articulate how WVDEP's reliance on that record was arbitrary and capricious; and 6) OSM's NOV is void because it was not supported by substantial evidence and was an abuse of discretion. Because the Court determines WVDEP's reliance on SMB's decision constituted "good cause" for taking no further action, thereby precluding OSM oversight, it need not consider Elk Run's other arguments.

---

4. 30 C.F.R. § 842.11(b)(1)(iii)(B), provides, *inter alia:* "no Federal inspection action shall be tak-

## JURISDICTION

OSM's Motion to Dismiss challenges the Court's jurisdiction to entertain this action. OSM argues the enforcement action was taken pursuant to 30 U.S.C. § 1271(a)(3) while Elk Run contends the action was taken pursuant to 30 U.S.C. § 1271(a)(1). The particular subsection of the enabling statute authorizing the enforcement action is at issue because OSM contends a notice of violation or a cessation order, if issued pursuant to 30 U.S.C § 1271(a)(1), would be subject to direct federal district court review, while a notice of violation or cessation order issued under 30 U.S.C. § 1271(a)(3) requires exhaustion of administrative remedies before resort to district court jurisdiction.

Elk Run asserts OSM does not have the authority to issue the NOV pursuant to 30 U.S.C. § 1271(a)(3), but only under 30 U.S.C. § 1271(a)(1). OSM asserts that § 1271(a)(1) merely establishes the TDN process for notifying the state regulatory authority that OSM has reason to believe a violation exists, giving the state regulatory authority the opportunity to enforce its regulatory program, and upon failure of the state regulatory authority to act appropriately, provides the authority for OSM to conduct an inspection. Section 1271(a)(1) does not, OSM argues, provide authority for enforcement actions such as issuing NOV's or CO's; that power comes only from § 1271(a)(3). Thus, OSM concludes, although its TDN to WVDEP was issued under § 1271(a)(1), the NOV to Elk Run could not have been issued pursuant to § 1271(a)(1).

Title 30 U.S.C. § 1271(a)(1) states:

(1) Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement ... or any permit condition required by this chapter, the Secretary shall notify the state regulatory authority ... in the State in which such violation exists. If ... the State regulatory authority fails within ten days after notification to take appropriate

---

en ... until the Deputy Director has completed [the informal] review."

action to cause said violation to be corrected or to show good cause for such failure and transmit notification of its action to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring. . . .

Title 30 U.S.C. § 1271(a)(3) states:

(3) When, on the basis of a Federal inspection which is carried out . . . pursuant to . . . section 1254(b) of this title, . . . the Secretary or his authorized representative determines that any permittee is in violation of any requirement of this chapter or any permit condition required by this chapter; but such violation does not create an imminent danger to the health or safety of the public, or cannot be reasonably expected to cause significant, imminent environmental harm to land, air, or water resources, the Secretary or authorized representative shall issue a notice to the permittee or his agent fixing a reasonable time but not more than ninety days for the abatement of the violation and providing an opportunity for public hearing.

■ This Court's jurisdiction to review OSM's NOV arises from the Administrative Procedure Act, 5 U.S.C. §§ 701–706, which provides for judicial review of agency action. In *Darby v. Cisneros,* 509 U.S. 137, 154, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993), the Supreme Court held "where the APA applies, an appeal to 'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute. . . ." (emphasis in original). Title 30 U.S.C. § 1275 explicitly mandates administrative review of enforcement actions brought under § 1271(a)(3), but does not expressly require such review of OSM actions taken pursuant to § 1271(a)(1). Thus, if OSM had the authority to issue the NOV to Elk Run pursuant to § 1271(a)(3), Elk Run must exhaust administrative remedies before challenging the NOV.

The Court finds and concludes, however, OSM's NOV in this case could not have been issued legally under either §§ 1271(a)(1) or (a)(3). 30 CFR § 842.11(b)(1)(ii)(B)(2) states: "an action or response by a State

regulatory authority that is not arbitrary, capricious, or an abuse of discretion under the state program shall be considered 'appropriate action' to cause a violation to be corrected or 'good cause' for failure to do so." In *National Coal Assoc. v. Uram,* 1994 WL 736422, 8 (D.D.C.1994), OSM and the Department of the Interior asserted:

Under SMCRA, primacy states have primary responsibility for enforcing the Act. Because these states are the primary authorities charges with administering the Act through their approved programs, they should be entitled to latitude in administering their approved programs. The federal government's role is one of oversight. The due deference Congress intended the states be accorded under SMCRA is analogous to the deference accorded executive agencies given primary responsibility for the implementation of particular statutes. In such instances, the standard of review of the agency's action is arbitrary and capricious.

WVDEP's response to OSM's TDN was not arbitrary and capricious because the State provided good cause for not pursuing enforcement action against Elk Run. In fact, the State Office of Surface Mining Board held a day-long evidentiary hearing on May 30, 1995 in which it determined Elk Run had not damaged the Judy property. SMB's final order of July 22, 1995 vacated the State NOVs and COs.

In certain situations, OSM may instigate enforcement actions in primacy states pursuant to § 1271(a), but OSM may not issue NOVs or COs in a primacy state unless the state regulatory authority failed to take "appropriate action" or did not provide "good cause" for failing to take appropriate action in response to a federal NOV. In this case, because WVDEP provided good cause[5] for not taking action when it informed OSM that the SMB precluded further WVDEP action by vacating the State NOVs and COs, OSM was not authorized to issue a NOV under any section of 1271. The Court need not, therefore, reach the issue of the precise statutory source of OSM's authority to issue NOVs and COs in primacy states.

---

**5.** *See* discussion of "good cause" standard *infra.*

OSM did not have the authority to issue the NOV to Elk Run. The ten-day notice rules at 30 C.F.R. § 842.11(b)(1) require OSM to defer to primacy states. The preamble to 30 C.F.R. § 842.11 states:

> Implementation of the goal of state primacy requires that OSMRE defer to a state's interpretation of its own regulations, as long as that deference occurs within the framework of careful oversight, as provided by the statute. [The Secretary recognizes and the final TDN rule implements] a state's interpretation of its own program as long as it is not inconsistent with the terms of the program approval ... and as long as the state interpretation is not arbitrary, capricious, or an abuse of discretion.

53 Fed.Reg. 26,732 (1988). According to 30 C.F.R. § 842.11(b)(1)(ii)(B)(2) (1988),

> an action or response by a state regulatory authority that is not arbitrary, capricious, or an abuse of discretion under the state program shall be considered "appropriate action" to cause a violation to be corrected or "good cause" for failure to do so.

"Appropriate action" is defined as including "enforcement or other action authorized under the State program to cause the violation to be corrected." § 842.11(b)(1)(ii)(B)(3) (1988). According to the preamble to the regulation:

> The context of ["appropriate action"] as used in section [1271(a)(1)] is an action which causes the violation to be corrected. If the state takes action to cause the violation to be corrected, no need exists for the Secretary to conduct an inspection of the site. For purposes of that subsection, the nature of the action is not necessarily relevant, as long as an authorized action causes abatement to occur.

53 Fed.Reg. 26,734 (1988). In this case, the WVDEP took appropriate action to cause the violation to be corrected when it issued State NOVs and COs. WVDEP was overruled, however, by a higher state administrative body, the SMB, which determined no violation occurred and which required no abatement action. According to 30 C.F.R. § 842.11(b)(1)(ii)(B)(4), the action of SMB provides an excuse or good cause for the

State's failure to abate the perceived violation.

The term "good cause" is defined as including situations in which:

> (iv) the State regulatory authority is precluded by ... an administrative body or court of competent jurisdiction from acting on the possible violation, where that order is based on the violation not existing....

30 C.F.R. § 842.11(b)(1)(ii)(B)(4). This is precisely the situation presented in this case. WVDEP, the State regulatory authority, was precluded by SMB, an independent administrative body, from acting on a possible violation based on SMB's determination that a violation did not exist.

In *National Coal Assoc. v. Uram*, 1994 WL 736422, 14 (D.D.C.1994), the Court pointed out "SMCRA provides that the Secretary should first determine the propriety of the state response before ordering a federal inspection. If the state's response is inconsistent with SMCRA and does not constitute good cause, the Secretary can take appropriate action provided for in Section [1271](a)(3)." OSM notes the preamble to the TDN rule states "a state regulatory authority cannot disregard an injunction issued for any reason by a state court. OSMRE concludes that good cause exists for the regulatory authority not acting only where the order has a proper basis." 53 Fed.Reg. 26739 (1988). OSM fails to cite the next sentence of the preamble, however, which states "[s]uch a basis would exist if ... the state court concluded the violation does not exist." This preamble mirrors 30 C.F.R. § 842.11(b)(1)(ii)(B)(4). Again, "good cause" existed for WVDEP not pursuing further action against Elk Run because WVDEP was precluded by SMB from acting based on SMB's determination that a violation did not exist. No other "basis" is required by either the preamble or the regulation itself.

■ Even if the preamble indicated, as OSM contends it does, that an independent "proper basis" is required to establish "good cause," the day long evidentiary hearing conducted by SMB satisfied that requirement. During the hearing, Elk Run had the burden of proof. It presented the testimony of its mine manager, a civil engineer with a Ph.D.

in geotechnical engineering, and a blasting expert who, since October 1994, monitored all of Elk Run's blasts with seismographs. SMB ruled 4 to 2 that Elk Run did not damage the rental property. The Board chairman, speaking for the majority stated Elk Run's technical experts had "presented testimony that was highly persuasive and conclusive." Pl.'s Mem Supp.Replim.Inj. Ex 3 at p. 373. The Board further concluded "[t]he old house is so old that its probably very likely that there has been some change in either the foundation or the principal supports that have resulted in spontaneous damage to the house." *Id.* at pp. 374–75. Even the two Board members who voted to affirm the State NOV's found Elk Run had "demonstrated a statistical probability that damage was unlikely in this case." *Id.* at p. 375. The Court concludes not only was WVDEP's response to OSM's TDN not arbitrary and capricious, but also that SMB's determination that there had been no violation was not arbitrary and capricious.

 Finally, because WVDEP's response to OSM's TDN constituted "good cause," OSM was not authorized by any subsection of § 1271(a) to issue the NOV to Elk Run.[6] Exhaustion of administrative remedies is a prerequisite for judicial review of agency action only when such exhaustion is expressly required by statute, *Darby v. Cisneros, supra,* 509 U.S. at 153–54, 113 S.Ct. at 2548. Because 30 U.S.C. § 1275(a)(1) requires exhaustion only in OSM enforcement actions taken pursuant to § 1271(a)(2)[7] and (a)(3), and because the NOV issued in this case was not authorized by either of those subsections, this Court has

jurisdiction to review final[8] agency action pursuant to 30 U.S.C. § 1276 and the APA, 5 U.S.C. §§ 701–06.

Accordingly, the Court DENIES OSM's motion to dismiss. The standard used to determine whether a motion for summary judgment should be granted or denied has been stated by our Court of Appeals as follows:

A moving party is entitled to summary judgment 'if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.Pro. 56(c). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979).

A genuine issue exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2514. The plaintiff is entitled to have the credibility of all his evidence presumed. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S.

---

6. If OSM is not satisfied with the enforcement program set up in West Virginia allowing SMB to overrule WVDEP actions, it may pursue remedies under 30 C.F.R. §§ 732 and 733 which provide formal procedures for revoking all or part of a primacy state's enforcement scheme on the grounds that the State is not enforcing its program as a whole.

7. 30 U.S.C. § 1271(a)(2) authorizes agency enforcement action when the alleged violation creates imminent danger to public health or safety or poses imminent environmental harm to air, land or water resources. OSM does not claim its NOV was issued pursuant to that subsection of the statute.

8. OSM's impending cessation order against Elk Run constitutes final agency action and is therefore reviewable in district court under Section 10(c) of the APA. The Supreme Court held:

the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.

*Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 193, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985). The issuance of a CO would inflict an actual, concrete injury on Elk Run because it orders Elk Run to cease blasting, the effect of which would shut down the mining operation.

317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The opposing party must demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A mere scintilla of evidence supporting the case is insufficient. *Id.*

*Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), *cert. denied,* —— U.S. ——, ——, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994). There are no material facts in dispute in this case. Because the Court finds and concludes WVDEP provided good cause to OSM for not pursuing further action against Elk Run, and that OSM thus was not authorized to take enforcement further action, it **GRANTS** Plaintiff's Motion for Summary Judgment, declares void the NOV issued by OSM to Elk Run on December 7, 1995, and enjoins OSM from enforcing its NOV.